UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Germaine Fairchild,<br>        Plaintiff,<br><br>        v.<br><br>Quinnipiac University,<br>        Defendant. | No. 3:13cv1877 (SRU) |

### Ruling on Motion to Dismiss

Plaintiff Germaine Fairchild ("Fairchild") brings this lawsuit against her former employer, Quinnipiac University ("Quinnipiac" or "the University"), for violations of the anti-retaliation provision of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX"), Connecticut's Equal Pay Act, Conn. Gen. Stat. § 31-75, *et seq.* ("CEPA"), and Conn. Gen. Stat. § 31-51q. Now before me are Quinnipiac's Motion to Dismiss (doc. # 10), Fairchild's Motion to Defer the Issues Raised in Defendant's Motion to Dismiss until Summary Judgment (doc. # 14), and Fairchild's Motion to Strike Defendant's Motion to Dismiss (doc. # 15). For the reasons set forth below, Quinnipiac's motion is denied, and both of Fairchild's motions are denied as moot.

**I.    Background**

Quinnipiac is a private university located in Hamden, Connecticut. Compl. ¶ 7 (doc. # 1). Fairchild was the head coach of the women's softball team at Quinnipiac for over a decade, until she was terminated in July 2013. *Id.* ¶ 10. Fairchild was hired as the full time head coach of women's softball by Quinnipiac's Athletic Director, Jack McDonald, in October 2001. *Id.* ¶ 11. She entered into a written contract with the University, which was renewed annually until 2013. *Id.*

1

During Fairchild's tenure and under her direction, the women's softball team made it to the Northeast Conference tournament seven times and made the finals four times. *Id.* ¶ 12. Fairchild asserts that she received many positive letters from athletes, parents, assistant coaches, administrators, colleagues, student-athlete trainers and outside observers of Quinnipiac Athletics during her time as the women's softball head coach at the University. *Id.* ¶ 13. In her 2012 performance review, McDonald rated Fairchild as "high" for a merit increase. *Id.* ¶ 15.

In April 2009, a group of Quinnipiac female volleyball players and their coach brought a class action lawsuit against Quinnipiac, alleging violations of Title IX. *Id.* ¶ 17. That case, *Biediger, et al. v. Quinnipiac University*, No. 3:09cv621 (SRU), was on my docket. On May 22, 2009, I granted the plaintiffs' motion for a preliminary injunction, enjoining Quinnipiac from: (a) eliminating Quinnipiac's women's varsity intercollegiate volleyball team or any other women's teams or athletic participation opportunities; (b) involuntarily terminating the employment of the coaches of Quinnipiac's women's varsity intercollegiate volleyball team; (c) reducing its financial, material, or other support for the Quinnipiac women's varsity intercollegiate volleyball team or any other women's intercollegiate team; and (d) restricting or denying Quinnipiac's women's varsity intercollegiate volleyball team access to facilities, coaching, training, or competitive opportunities. *Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 298 (D. Conn. 2009).

On July 21, 2010, following a bench trial, I found in favor of the plaintiffs on their first claim for relief and issued a declaratory judgment that Quinnipiac violated Title IX and the regulations promulgated pursuant thereto by failing to provide equal athletic participation opportunities to its female students. *Biediger v. Quinnipiac Univ.*, 728 F. Supp. 2d 62, 114 (D. Conn. 2010), *aff'd*, 691 F.3d 85 (2d Cir. 2012). I also permanently enjoined Quinnipiac from

discriminating against its female students on the basis of sex by failing to provide equal athletic participation opportunities. *Id*. In December 2011, Qunnipiac moved to lift the injunction (doc. # 225) and another trial was held in June 2012. On March 4, 2013, I denied Quinnipiac's motion to lift the injunction (doc. # 305). The parties then entered into a consent decree, which I approved on June 20, 2013 (doc. # 311).

During the course of the *Biediger* lawsuit, Fairchild was subpoenaed to testify as a witness at the preliminary injunction hearing and at a deposition. Compl. ¶ 19. Fairchild provided credible testimony about the University's roster-management system, which I relied on in granting the plaintiffs' motion for a preliminary injunction and in the later injunction proceedings. *Id.* ¶ 20; *see also Biediger*, 616 F. Supp. 2d at 284-88, 297 ("As effectively demonstrated by Fairchild's testimony about the players on her team, those students filling the extra roster spots are not receiving genuine opportunities to participate and the roster count on the EADA report fails to capture the numerical reality."). Fairchild was terminated on July 11, 2013, exactly three weeks after I approved the consent degree in *Biediger*. Compl. ¶ 26.

## II.   Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

**III.   Discussion**

    A.  Retaliation Claims

Fairchild asserts that she was terminated in retaliation for providing testimony supportive of the plaintiffs in the *Biediger* lawsuit, in violation of both Title IX and Conn. Gen. Stat. § 31-51q.  Fairchild relies on the same facts to support both claims.  Quinnipiac argues that Fairchild's speech was not protected under either statute.

Title IX provides, in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  "Retaliation against a person because that person has complained of sex discrimination is [a] form of intentional sex discrimination encompassed by Title IX's private

4

cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  As a result, "when a funding recipient retaliates against a person *because* [s]he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."  *Id.* at 174.

Section 31-51q prohibits an employer from "subject[ing] any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state," where the employee's activity "does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer."  "To be protected by the first amendment, the plaintiff's speech must have been on a matter of public concern, and the plaintiff's interest in expressing himself on the particular matter must not have been outweighed by any injury the speech could cause to the employment relationship."  *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 406-07 (D. Conn. 2013) (citing *Kennedy v. Coca–Cola Bottling Co. of New York, Inc.*, 170 F. Supp. 2d 294, 299 (D. Conn. 2001) (internal citations omitted)); *see also Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 776 (1999) ("Section 31-51q protects from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern.").  Whether a plaintiff's speech involves a matter of public concern is a question of law for the court.  *E.g.*, *Daley*, 249 Conn. at 777.

"The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'"  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)).  Gender discrimination in employment clearly is a matter of public concern.  *Konits v. Valley Stream*

*Cent. High Sch. Dist.*, 394 F.3d 121, 125 (2d Cir. 2005) (citing *Flamm v. Am. Ass'n Of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000) ("Gender discrimination is a problem of constitutional dimension, and the efforts . . . . to combat it clearly relate to a matter of public concern.")). Moreover, in the related context of actions under 42 U.S.C. § 1983, the Second Circuit has explicitly held that testifying as a witness on behalf of others in discrimination-related proceedings is a form of protected speech on a matter of public concern. *Id.* at 124-26. However, speech that is intended solely to redress personal grievances, regardless of the topic, is not a matter of public concern. *See id.*; *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999).

Whether a particular statement addresses a matter of public or private concern is a factual inquiry, and "depends on its content, its form, and the context in which it is made." *Daley*, 249 Conn. at 777. Thus, where the nature of the speech and the employee's motivations are not readily apparent from the face of the complaint, the issue may not be resolved on a motion to dismiss. *See, e.g.*, *Rosenberg v. City of New York*, No. 09-CV-4016 CBA LB, 2011 WL 4592803, at *9 (E.D.N.Y. Sept. 30, 2011).

Quinnipiac asserts that Fairchild's testimony was not a protected activity as a matter of law, under Title IX or section 31-51q, because it did not actually relate to Title IX sex discrimination or a matter of public concern; instead, Fairchild testified only to Quinnipiac's roster-management program, a "lawful practice," and the application of that lawful practice to the women's softball team. Def.'s Mem. Supp. Mot. to Dismiss 8 (doc. # 11). In advancing its arguments, Quinnipiac relies on the transcript of Fairchild's testimony at the preliminary injunction proceeding, as well as the transcript of her deposition.

"When material outside the complaint is presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment . . . and all parties shall be given

6

reasonable opportunity to present all material made pertinent to such a motion.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing Fed. R. Civ. P. 12(d)). "For purposes of this rule," however, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Id.* (internal quotation marks and citations omitted). Moreover, the court may consider a document that is not incorporated by reference, without converting the motion to one for summary judgment, if "the complaint relies heavily upon its terms and effect," thereby rendering it "integral" to the complaint. *Id.*

Quinnipiac asserts that the transcripts, which "memorialize" Fairchild's allegedly protected speech, are either "effectively incorporated" into the complaint or, at least, integral to it. Def.'s Mem. Supp. Mot. to Dismiss 7 n.1. Even assuming that Quinnipiac's inclusion of the transcripts does not require me to convert its motion into one for summary judgment, it nonetheless would be inappropriate to consider the transcripts at this stage, because Fairchild has had no chance to explain their contents. As Fairchild asserts, "significant additional testimony and evidence from the *Biediger* case" would be necessary to "fully address the issue . . . that Coach Fairchild's testimony did not deal with 'sex discrimination,' or did not address a matter of 'public policy.'" Pl.'s Mem. Opp. Mot. to Dismiss 3 (doc. # 22). To open that door would require me to convert Quinnipiac's motion into one for summary judgment, *see* Fed. R. Civ. P. 12(d), which I am not inclined to do at this stage.

Construing the factual allegations as true and drawing all reasonable inferences in favor of the plaintiff, Fairchild has pleaded sufficient facts to support a Title IX retaliation claim and a section 31-51q claim against Quinnipiac. The complaint alleges that Fairchild testified as a witness at a preliminary injunction hearing and at a deposition in a Title IX lawsuit brought by

7

female student athletes and their coach against Quinnipiac.  Compl. ¶¶ 17, 19.  Fairchild did not engage in this speech solely to air personal grievances; she did so pursuant to a subpoena.  *See id.*  Fairchild's testimony was relied on in the injunction proceedings in *Biediger*.  *See id.* ¶ 20; *see also Biediger*, 616 F. Supp. 2d at 284-88, 297.  Lastly, the complaint asserts that Fairchild was terminated on July 11, 2013, three weeks after I approved the consent decree in *Biediger*.  *Id.* ¶¶ 25-26.  On those facts, it is plausible that she was terminated in retaliation for providing "truthful testimony about her observations of unequal treatment of female student athletes at Quinnipiac," in violation of both Title IX and section 31-51q.  *Id.* ¶¶ 21, 30.

      Finally, it is worth noting that I would reach the same result even if I were to consider the transcripts.  Fairchild testified that Quinnipiac's roster-management targets were unreasonably high, making it extremely difficult for her to provide a "legitimate Division I experience" for her players.  *See* Def.'s Ex. A at 11 (doc. # 12-1).  She complained that although the University required her to increase her roster, it refused to fund the women's softball team adequately and otherwise failed to provide resources necessary to support the team.  *See id.* at 7-8, 11-14, 17.  I found Fairchild's testimony to be credible, and expressly relied on it in my ruling issuing a preliminary injunction, concluding that "students filling the extra roster spots are not receiving genuine opportunities to participate" in sports at Quinnipiac.  *Biediger*, 616 F. Supp. 2d at 297.  Fairchild's testimony lent support to the plaintiffs' contention that Quinnipiac set high numbers for its women's teams, thus creating a de facto floor on the basis of sex and effectively denying genuine athletic participation opportunities to some women athletes.  That I ultimately ruled that Quinnipiac's roster management program (as modified following the preliminary injunction ruling) did not entitle the plaintiffs to relief under Title IX is not relevant; Fairchild provided testimony adverse to her employer in a Title IX suit against the University.  Shortly after the

conclusion of that lawsuit, she was terminated. Those facts are sufficient to overcome a motion to dismiss.

Quinnipiac's motion to dismiss is denied with respect to the Title IX retaliation and the section 31-51q claims. Fairchild's Motion to Defer the Issues Raised in Defendant's Motion to Dismiss until Summary Judgment and her Motion to Strike, both of which relate to Quinnipiac's attack on those claims, are therefore denied as moot.

### B. CEPA Claim

Quinnipiac moves to dismiss Fairchild's CEPA claim on the grounds that the allegations in support of this claim are conclusory and lack adequate factual support. Def.'s Mem. Supp. Mot. to Dismiss 12. Fairchild asserts that the allegations in the complaint are sufficient to put the University on notice; therefore, the CEPA claim should not be dismissed. Pl.'s Mem. Opp. Mot. to Dismiss 8-9.

"Claims brought pursuant to the Connecticut Equal Pay Act are analyzed under the same standard as the Federal Equal Pay Act, 29 U.S.C. § 206(d)." *Morse v. Pratt & Whitney*, No. 3:10-CV-01126 JCH, 2013 WL 255788, at *11 (D. Conn. Jan. 23, 2013). "To survive a motion to dismiss, a plaintiff is required to proffer factual support for the allegation that her employer violated the [Federal] Equal Pay Act." *Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001); *see also Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) (A "plaintiff must allege at least some facts to support contentions that her employer violated the EPA."). "Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim." *Bass*, 129 F. Supp. 2d at 491 (citing *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991)).

The complaint asserts that since her date of hire, Fairchild's wages and benefits were less than those paid to similarly-situated male employees. Compl. ¶ 6. No additional facts are provided. Ordinarily, more detailed allegations would be necessary in order to put a defendant on notice of the basis of an EPA claim against it. *See, e.g.*, *Bass*, 129 F. Supp. 2d at 503. In these circumstances, however, Quinnipiac is well aware of the potential universe of similarly-situated male head coaches whose salaries might be higher than Fairchild's; as of the date of Fairchild's termination, there were approximately ten male head coaches of varsity teams at Quinnipiac.[1] Moreover, although not directly related to Fairchild's EPA claim, Quinnipiac is aware of the need to increase the salaries of the head coaches of its women's teams. *See* Consent Decree (doc. # 307-1). In light of the particular circumstances of this case, Fairchild's CEPA claim is sufficient to survive a motion to dismiss.

## IV.   Conclusion

For the foregoing reasons, the defendant's motion to dismiss is **DENIED**. Both of the plaintiff's motions are **DENIED** as moot.

So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of April 2014.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[1] Quinnipiac Bobcats Website, http://www.quinnipiacbobcats.com/landing/index (last visited Apr. 22, 2014). This represents the total number of male head coaches and does not distinguish between male head coaches of men's and women's sports, nor does it account for differences between coaches of "Tier 1" sports like basketball and "Tier 2" sports like women's softball.